UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| EDAZ REDDEN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 C 10819 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| JAY WAYNE JENKINS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

To paraphrase Defendant Jay Wayne Jenkins—better known to the Court and others as the rapper "Young Jeezy"—Plaintiff Edaz Redden claims that when they play the new Jeezy, Redden goes crazy because Jenkins' song "I Ball, I Stunt" was the realest song Jenkins never wrote. Redden alleges he actually wrote "I Ball, I Stunt" but Jenkins recorded it as his own, infringing on Redden's copyright. After Redden filed suit against Jenkins in this Court and then filed a return of summons with proof that Jenkins refused personal service of the lawsuit, Redden moved for default against Jenkins. He eventually secured a default judgment in the amount of $111,347.29. When Redden sought to collect the judgment, Jenkins moved to temporarily enjoin Redden from enforcing the judgment and to vacate the default judgment [30]. The Court denied the injunction request, *see* Doc. 39, but now considers Jenkins' motion to void the default judgment based on absence of personal jurisdiction and service of process. Because Jenkins fails to prove the Court lacks personal jurisdiction, the Court denies Jenkins' motion in part. The Court must hold an evidentiary hearing to resolve the service of process issue because a fact dispute exists as to whether Redden's process server, Barrett Ferrell, completed service.

**BACKGROUND**

Redden wrote the lyrics composition for a song called "I Ball, I Stunt" (hereinafter, "Redden's Song") in 2007 and recorded a demo version, which he sent in December 2010 to Kyle Smith, a collaborator with rapper Kenneth Campbell, who performs as "Scrilla" and who once was signed to Jenkins' CTE World record label. Later, Jenkins posted a version of Redden's Song on Jenkins' YouTube account, titled "I Ball, I Stunt" and performed by Jenkins and Campbell. Jenkins then released "I Ball, I Stunt" as a single and on at least one of his albums. Redden filed suit on December 2, 2015, alleging that "I Ball, I Stunt" copies elements of Redden's Song; that Redden never gave Jenkins permission to record, distribute, or otherwise use Redden's Song; and that Jenkins promoted, advertised, and sold "I Stunt, I Ball" and performed concerts all in Illinois.

On March 1, 2016, Redden filed a summons returned as executed on Jenkins, containing Ferrell's sworn affidavit of service. Ferrell swore to a notary that he approached Jenkins at 12:56 a.m. on February 26, 2016 for personal service at the Fillmore Charlotte, a music venue in North Carolina, and that Jenkins refused service, after which his personal security guard, named "TB2," took the paperwork. Ferrell also noted that Charlotte police detective Sandra Horton witnessed Jenkins' refusal to accept personal service.

Redden moved for entry of default on March 21, 2016. The Court granted the motion on March 24, 2016 and entered a default judgment against Jenkins after a prove-up hearing on April 14, 2016 in the amount of $98,519.29. The Court later granted $12,828 in fees and costs in favor of Redden. Redden's attorney mailed a copy of the motions for default entry and default judgment to Jenkins' house via First Class mail the same day he filed each motion. Neither

mailing was returned. On August 4, 2016, the Court entered judgment against Redden for $111,347.29.

Jenkins filed his motion to vacate the default judgment on January 20, 2017, supported by three affidavits. Jenkins swore in his own affidavit that he created no artistic work intended specifically for Illinois. He also swore Ferrell never attempted to serve him, explaining that "he was never given notice of this lawsuit by anyone" and "did not refuse service." Doc. 30-1 ¶ 10. Jenkins' business manager submitted an affidavit contradicting Ferrell's version of the events during the early morning of February 26, 2016 and indicating that neither he nor any member of Jenkins' security staff goes by the name TB2. Detective Horton also submitted an affidavit swearing she met Ferrell and saw him interact with two people accompanying Jenkins, but she also stated she did not see Jenkins interact with Ferrell nor see anyone refuse service.

**ANALYSIS**

Jenkins argues the default judgment is void because the Court does not have personal jurisdiction over him and, alternatively, that the Court should void and vacate the default judgment because Redden did not serve Jenkins. "Under Federal Rule of Civil Procedure 60(b), a final judgment must be set aside if the court lacked personal jurisdiction" and a "judgment is also void as to any party who was not adequately served." *Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 859 (7th Cir. 2016); *Temtex Indus., Inc. v. TPS Assocs., LLC*, No. 09 C 1379, 2012 WL 1988020, at *3 (N.D. Ill. June 4, 2012) ("Federal Rule of Civil Procedure 55(c) allows the court to set aside a default judgment under Rule 60(b). Rule 60(b)(4) allows the court '[o]n motion and just terms' to relieve a party from a final judgment, order or proceeding if the judgment is void."). "When a district court enters a default judgment without personal jurisdiction over the defendant, 'the judgment is void, and it is a *per se* abuse of discretion to

3

deny a motion to vacate that default judgment.'" *be2 LLC v. Ivanov*, 642 F.3d 555, 557 (7th Cir. 2011) (quoting *Relational, LLC v. Hodges*, 627 F.3d 668, 671 (7th Cir. 2010)).

I.      **Personal Jurisdiction**

Jenkins argues the Court has no personal jurisdiction over him. When a defendant defaults after notice of the lawsuit, he has the burden of proving lack of jurisdiction (in contrast to the burden of proof standard at the motion to dismiss stage, which requires the plaintiff to establish a prima facie case of personal jurisdiction). *Id.* ("Because he knew about the suit and chose to default rather than defend, he must bear the burden of proof on his post-judgment motion challenging personal jurisdiction."); *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 & n.2 (7th Cir. 1986) (noting that because the defaulted defendants could not or did not establish the absence of notice, the burden of proof on the personal jurisdiction issue shifted to the defendants). Jenkins contends he had no notice of Redden's suit before the default judgment and thus argues that Redden has the burden of proof, but the Court places the burden of proof on Jenkins because he is the defaulted defendant and has not yet disproved the facts of service. *See Brown v. Walker*, No. 106-CV-218-TLS, 2006 WL 3487336, at *2 (N.D. Ind. Dec. 1, 2006) (noting the burden of proof is on the defendant who moves to void a default judgment based on improper service). If Jenkins proves he was not served, personal jurisdiction would not be an issue because without service, there is no personal jurisdiction. *Sikhs for Justice v. Badal*, 736 F.3d 743, 745 (7th Cir. 2013). Further, as discussed below, who bears the burden does not affect the Court's decision because Redden established a prima facie case of personal jurisdiction which Jenkins has not rebutted.

"[T]here are two branches of personal jurisdiction theory—general and specific," but because Redden only claims that specific jurisdiction is relevant here, the Court analyzes

whether his "lawsuit . . . result[s] from alleged injuries that arise out of or relate to the defendant's contacts with the forum." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (internal quotation marks omitted). Specific jurisdiction exists "when '(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities,'" and its exercise "must also comport with the traditional notions of fair play and substantial justice." *Villalobos v. Castaneda*, No. 12 C 8218, 2013 WL 5433795, at *5 (N.D. Ill. Sept. 27, 2013) (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010)). The Court accepts as true all of the complaint's well-pleaded facts and resolves any conflicts between affidavits relating to personal jurisdiction in the plaintiff's favor. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

Redden alleges that "a substantial part of the events giving rise to the claims occurred in this judicial district, including Defendant promoting, selling, and distributing sound recordings and videos featuring his unauthorized use of Plaintiff's composition, as well as Defendant performing concerts in this judicial district." Doc. 1 ¶ 5. While Redden alleges this in support of venue, the Court can review all allegations for purposes of personal jurisdiction. *Lakeview Tech., Inc. v. Vision Sols., Inc.*, No. 05 C 7209, 2007 WL 79246, at *3 (N.D. Ill. Jan. 9, 2007). And while there are multiple interpretations of Redden's allegation—including that the complaint merely alleges that Jenkins performed concerts, but not "I Ball, I Stunt," in Illinois— the Court draws all reasonable inferences bearing on personal jurisdiction in favor of Redden. *Farmer v. DirectSat USA, LLC*, No. 08-CV-3962, 2010 WL 380697, at *9 (N.D. Ill. Jan. 28, 2010) (reading complaint's allegations "[t]ogether and in favor of Plaintiff" for purposes of

5

determining specific jurisdiction). Therefore the Court reads Redden's complaint to allege that Jenkins promoted, sold, and distributed sound recordings and videos of "I Ball, I Stunt" and performed the song at concerts in this District, and these allegations establish specific jurisdiction. *See Wise v. Williams*, No. 1-10-CV-02094, 2011 WL 2446303, at *5 (M.D. Pa. May 18, 2011) ("By undertaking and profiting from the performance, sale, and advertising of "The Only Exception" in Pennsylvania, defendants 'avail[ed themselves] of the privilege of conducting activities within the forum State' and obtained the 'benefits of protections of its laws.'" (quoting *Asahi Metal Indus. Co. v. Super. Ct.*, 408 U.S. 102, 109, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987))), *report and recommendation adopted*, No. 1:10-CV-2094, 2011 WL 2436524 (M.D. Pa. June 15, 2011); *see also Villalobos*, 2013 WL 5433795, at *6 (defendant musicians' decision to play three concerts in Illinois using their alleged trademark-infringing band name, and their promotion of the band name and the concerts, demonstrated specific jurisdiction was proper over the defendants). Jenkins thus must prove that his performance, promotion, sale, or distribution did not arise out of or relate to his contacts with Illinois.

Jenkins argues that he did not target Illinois with any performance, consumption, or sale of "I Ball, I Stunt," swearing in his affidavit that he "never created any artistic work specifically for Illinois." Doc. 30-1. Of course, this sworn statement is not dispositive because a song need not be created specifically for Illinois in order for it to be performed, advertised, or sold there. Jenkins' affidavit, silent about performance, does not say whether he performed "I Ball, I Stunt" in Illinois. While Jenkins writes in his reply that "I Ball, I Stunt" is "not part of his performance set," he supports that argument with no affidavit or other evidence—such as set lists—showing that he did not perform "I Ball, I Stunt" in Illinois. Further, the Court must take as true Redden's allegation that Jenkins promoted, sold, and distributed the song in Illinois because Jenkins

6

presents no evidence that he did not. Jenkins' argument that third parties handled promotion, sale, and distribution of "I Ball, I Stunt" is unsupported with evidence. While Jenkins argues that the judicial record contains no evidence of Illinois residents consuming or purchasing the song within the state, he presents no evidence that consumers did not listen to or purchase "I Ball, I Stunt" (exclusively or with other songs) in Illinois. In summary, the information that the Court has before it suggests that Jenkins performed "I Ball, I Stunt" in Illinois and promoted, sold, and distributed the song there as well. And Jenkins presents no argument why exercise of specific jurisdiction does not comport with the notions of fair play and substantial justice, and the Court finds no conflict either.

Jenkins points out that another court in this District found there was no specific jurisdiction over a record label accused of copyright infringement, but that case is distinguishable. In *Johnson v. Barrier*, No. 15-CV-03928, 2016 WL 3520157 (N.D. Ill. June 28, 2016), the defendant challenging personal jurisdiction was a record company moving to dismiss pursuant to Rule 12(b)(2), not a performer moving to void a default judgment. *Cf. id.* at *1. The *Johnson* court did not exercise specific jurisdiction over the record company because the individual performers played the alleged infringing song in Illinois, not the record company, and because the plaintiff, bearing the burden of proof in opposing the record company's Rule 12(b)(2) motion, provided no information about retail and online sales that showed the infringing song sale and consumption was connected to Illinois in any meaningful way. *Id.* at *4–5. Here, Jenkins is the performer and also bears the burden of proof. Because the Court finds that Jenkins has not met his burden, the Court denies his motion as to personal jurisdiction and turns to service of process.

7

## II. Service of Process

Jenkins argues that service never occurred, so the Court turns to the factual question of whether Redden has adequately demonstrated he served Jenkins. *See Relational, LLC*, 627 F.3d at 672 ("Hodges instead argues that he was not served at all. Thus, we assume personal service is a legally acceptable mode of service in these circumstances and focus our attention on the factual question of whether Relational proved that Hodges was served." (footnote omitted)). Ferrell's "signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *Id.* (quoting *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993)).

Jenkins challenges Ferrell's affidavit as untruthful and as lacking the proper jurat. Ferrell swore his affidavit of service to a notary, which the Court respects at this stage. *See id.* Jenkins does not point out what is wrong with the affidavit's jurat, and the Court will not make Jenkins' argument for him or strike affidavits for "hyper-technical" deficiencies. *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) ("The absence of the formal requirements of a jurat in . . . sworn affidavits [does] not invalidate the statements or render them inadmissible [if] they were actually sworn to before an officer authorized to administer an oath." (quoting *Peters v. United States*, 408 F.2d 719, 722 (Ct. Cl. 1969))). Jenkins' supporting affidavits, which at varying times corroborate, skirt around, or contradict Ferrell's affidavit, do, however, create disputes of fact. Therefore, the Court will set an evidentiary hearing to resolve the fact disputes about personal service. *See Century 21 v. Hometown Realtors*, No. 11 CV 5572, 2012 WL 92529, at *2 (N.D. Ill. Jan. 10, 2012) (setting evidentiary because disputed questions of fact regarding personal service prevented the court from determining whether the defaulted defendant presented the clear and convincing evidence needed to rebut the prima facie case of service).

**CONCLUSION**

The Court denies, in part, Defendant Jay Wayne Jenkins' motion to vacate default judgment [30]. The Court denies Jenkins' motion regarding personal jurisdiction and sets an evidentiary hearing to resolve the disputes of fact regarding service of process.

Dated: September 27, 2017

_____
SARA L. ELLIS
United States District Judge